**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

KH OUTDOOR, L.L.C., DALE P. EGGERS,
and MOOREA, INC.,

              Plaintiffs,

vs.                                       Case No. 3:04-cv-214-J-32MCR

CLAY COUNTY, FLORIDA,

              Defendant.

_____

## ORDER

This case is before the Court on Plaintiffs' Motion for Partial Summary Judgment (Doc. 70) and Defendant's Motion for Summary Judgment (Doc. 71). The parties filed responses (Docs. 77, 78) and additional materials (Docs. 74, 75, 76, 81, 84, 86, 87, 89, 90, 91, 94,[1] 95, 96). The Court heard oral argument on the motions, the record of which is incorporated by reference.

## I. Background

On March 1, 2004, plaintiff KH Outdoor, L.L.C. ("KH Outdoor"), which is in the business of erecting and operating advertising signs, submitted seven building permit application packets to Cheryl A. Miller, defendant Clay County's Zoning and Code Enforcement Director. The applications sought permits to erect seven 672 square

_____

[1]Defendant moved for leave to submit this additional authority. Plaintiffs did not file any response in opposition. The motion (Doc. 94) is granted and the exhibits attached to the motion are considered to be of record.

foot "off-premise signs" on seven different parcels of property within the County. (Doc. 74 [Defendant's Appendix in Support of Motion for Summary Judgment] at Ex. 42-48).

Ms. Miller did not accept the permits at the time they were presented, explaining to KH Outdoor's representative that the County's sign ordinance prohibited the erection of new billboards.  The sign ordinance in place on March 1, 2004 was Clay County Ordinance No. 98-7 ("Old Sign Ordinance").  See Doc. 74 at Ex. 59.  The Old Sign Ordinance prohibited the erection of new billboards in the County.  Old Sign Ordinance, § 20.7-21(1).  A "billboard" was defined by the Old Sign Ordinance as an "off-premise sign."  Old Sign Ordinance, § 20.7-3.  An "off-premise sign" was defined as "[a]ny sign identifying or advertising a business, person, activity, goods, product, commodity, service, or entertainment not related to the premises on which the sign is located, or to a business, person, activity, goods, product, commodity, service, or entertainment, which occupies or which is conducted, sold, or offered at a location other than on the premises on which the sign is located, including: . . . (4) *Billboards*: Billboards."  Old Sign Ordinance, § 20.7-3 (emphasis in original).

On March 4, 2004, upon request from KH Outdoor, Ms. Miller sent KH Outdoor's representative a letter formally denying the permit applications pursuant to section 20.7-21(1) of the Old Sign Ordinance.  (Doc. 74 at Ex. 61, 62).  KH Outdoor did not seek an appeal of Ms. Miller's decision to the County's Board of Adjustment,

as it was permitted to do (see Old Sign Ordinance (Doc. 74 at Ex. 59) at § 20.7-12(1)), but instead filed the instant action on March 24, 2004, alleging that the County's Old Sign Ordinance was an unconstitutional content-based regulation of commercial and non-commercial speech which violated the First and Fourteenth Amendments to the United States Constitution, as well as Florida law.

On June 25, 2004, the County enacted Ordinance No. 2004-34 ("New Sign Ordinance"), which repealed and replaced the Old Sign Ordinance. See Doc. 74 at Ex. 66. On July 30, 2004, following failed settlement negotiations with the County, KH Outdoor filed a motion for preliminary injunction seeking to enjoin the County from enforcing the Old Sign Ordinance and, in effect, to require the County to issue the seven billboard sign permits KH Outdoor applied for on March 1, 2004. Following a period of discovery and a full hearing, the Court entered an Order denying the motion for preliminary injunction upon finding that KH Outdoor had failed to show that it was substantially likely to prevail on the merits of its complaint. Doc. 45.

On February 4, 2005, with leave of Court, KH Outdoor filed a fifteen count Second Amended Complaint,[2] which added two additional party plaintiffs, MooreA,

---

[2]Following a sua sponte dismissal of its original complaint due to pleading defects, KH Outdoor filed an amended complaint early in the case; thus the addition of the two new party plaintiffs required the filing of a *second* amended complaint. Although it regrettably escaped the Court's attention at the time of filing, the Court now sees that the second amended complaint suffers from the same shot-gun pleading defect as did the original complaint (the first amended complaint corrected this error). The Court assumes the improper incorporation of every preceding paragraph into each count

Inc., ("MooreA"), the owner of one of the parcels of land upon which KH Outdoor had sought a permit to erect a billboard and with whom KH Outdoor had entered into a lease agreement to do so, and Dale P. Eggers, MooreA's president.  In their Second Amended Complaint, plaintiffs allege the same facial and as-applied constitutional challenges to the Old Sign Ordinance that they alleged in the original complaint. Nowhere in their Second Amended Complaint do plaintiffs acknowledge that, several months earlier, the Old Sign Ordinance had been repealed and replaced with the New Sign Ordinance.  Moreover, none of the plaintiffs applied for a Clay County sign permit following the enactment of the New Sign Ordinance in June 2004.  The parties have engaged in further discovery and have now filed cross-motions for summary judgment;[3] thus, this case is ripe for decision.

## II.  Standard of Review

Summary judgment may be granted only when there are no genuine issues of material fact and judgment is appropriate as a matter of law.  Fed.R.Civ.P. 56(c). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."  Celotex Corp. v. Catrett, 477 U.S.

_____

was an oversight by counsel and, were the outcome here any different, the Court would require further repleading.

[3]Plaintiffs filed a motion for partial summary judgment, reserving the issue of the amount of damages for a jury.

4

317, 322 (1986).  "[A]ll evidence and factual inferences reasonably drawn from the evidence [are viewed] in the light most favorable to [the party opposing the motion]." Castleberry v. Goldome Credit Corp., 408 F.3d 773, 785 (11th Cir. 2005) (citations omitted).

### III.  Discussion

Defendant claims that, for several reasons, it is entitled to summary judgment on all fifteen counts of the Second Amended Complaint.  First, defendant claims plaintiffs have failed to present a justiciable case or controversy as required for Article III standing because this case is rendered moot by the enactment of the New Sign Ordinance.  Defendant further claims plaintiffs have no standing to mount a facial challenge to the regulations.  Additionally, defendant claims that even if plaintiffs had standing to mount a facial challenge, the Old Sign Ordinance would withstand constitutional scrutiny because its provisions are not impermissibly content-based, it did not vest County officials with undue discretion, and any individually flawed provisions are severable.  Finally, defendant claims that plaintiffs acquired no vested rights in the building permits, they have failed to establish an equal protection claim, and they are not entitled to actual or nominal damages.

Plaintiffs claim they have standing to raise both facial and as-applied challenges to the Old Sign Ordinance.  Plaintiffs further claim they are entitled to summary judgment because the County enforced an unconstitutional content-based

5

sign ordinance that is invalid because it does not withstand strict scrutiny, it lacked required procedural safeguards, it conferred an impermissible degree of discretion on County officials who evaluated sign permit applications, it failed to satisfy the "Central Hudson test," and the unconstitutional provisions are not severable, thereby conferring plaintiffs with vested rights in the sign permits and entitling plaintiffs to compensatory damages in an amount to be determined by a jury or an award of general or nominal damages in an amount determined by the Court.

## A.   Mootness

Mootness is a "threshold issue" because "[i]f a suit is moot, it cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it." Seay Outdoor Advertising, Inc. v. City of Mary Esther, Florida, 397 F.3d 943, 946 (11th Cir. 2005) (citations omitted). See also, National Advertising Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005) rehrg. and rehrg. en banc denied, Table 03-15516 (11th Cir. May 20, 2005), petition for cert. filed, 74 USLW 3260 (U.S. Oct. 14, 2005) (noting that if suit has become moot, it must be dismissed for lack of jurisdiction); Coral Springs Street Systems, Inc. v. City of Sunrise, 371 F.3d 1320, 1328 (11th Cir. 2004) (stating that jurisdictional question of mootness must be addressed before considering merits of case).

One method by which a case may become moot is "when a subsequent law brings the existing controversy to an end . . . ."  National Adv., 402 F.3d at 1332 (citations and quotations omitted).  "Constitutional challenges to statutes are routinely found moot when a statute is amended or repealed."  Seay, 397 F.3d at 947.  See also, National Adv., 402 F.3d at 1332 (noting that subsequent amendment to zoning ordinance may render legal challenges moot); Coral Springs, 371 F.3d at 1328 (stating that "when a subsequent law brings the existing controversy to an end the case becomes moot and should be treated accordingly") (citations omitted).  Once an ordinance has been repealed, thus calling into question the Court's subject-matter jurisdiction, the party challenging the ordinance "bears the burden of presenting affirmative evidence that its challenge is no longer moot."  National Adv., 402 F.3d at 1334.  Here, the Old Sign Ordinance plaintiffs challenge has since been repealed and fully amended by the County's enactment of the New Sign Ordinance.  However, the Court should not find a challenge to be moot "if the law is reasonably likely to be reenacted or when it is replaced by another constitutionally suspect law."  Seay, 397 F.3d at 947.  Both these circumstances must be ruled out before the Court could find plaintiffs' constitutional challenges to be moot.

### 1. Likelihood of Reenactment

Where a defendant voluntarily ceases allegedly illegal conduct,[4] the legal questions presented are mooted only when it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." National Adv., 402 F.3d at 1333. In evaluating whether a suit has been rendered moot by the voluntary repeal of a law, the "most significant[ ]" determining factor is "whether the court is sufficiently convinced that the repealed law will not be brought back." Id. at 1334 (quoting Coral Springs, 371 F.3d at 1331). And, because the repeal of the statute calls the court's jurisdiction into question, the party seeking to invoke the court's jurisdiction "bears the burden of presenting *affirmative* evidence that its challenge is no longer moot" - - "[m]ere speculation" that defendant may bring back the challenged law "is no substitute for concrete evidence of secret intentions." Id. (emphasis added). Thus, under the doctrine of voluntary cessation, a suit may be saved from being rendered moot where there is a "substantial likelihood" that the law will be reenacted. Id. (quoting Coral Springs, 371 F.3d at 1329).

Here, the County's counsel has stated before this Court on the record that the Old Sign Ordinance will not be reenacted and the County filed an affidavit by its Zoning and Code Enforcement Director stating that the County has "no intention" of

_____

[4]Plaintiffs' main assertion here is that the County used impermissible content-based distinctions in regulating signs.

reenacting the Old Sign Ordinance.  Doc. 27 at Ex. 25 at ¶33.  The Court may presume that a government official is unlikely to resume allegedly illegal activity (National Adv., 402 F.3d at 1333; Seay, 397 F.3d at 947) and the Court in this case finds[5] there is no substantial likelihood that the law will be reenacted.  See Seay, 397 F.3d at 947-48 (finding no reason to believe old sign code would be reenacted upon city's counsel's express statement to that effect at oral argument); Coral Springs, 371 F.3d at 1332-33 (relying on city's counsel's representation that city had no intention to reenact old sign code to find city evidenced no bad faith by repeal).

While it is true, as plaintiffs point out, that both Seay and Coral Springs found further evidence of the government's sincerity in the timing of the passage of the new sign ordinance (which, in both cases, preceded the filing of a lawsuit), in both of those cases, it was the plaintiff's initiation of discussions with the city about the constitutionality of the old sign ordinance that prompted the city to reevaluate and eventually repeal it.  Additionally, in National Advertising, the City did not amend the ordinance until six months *after* the initiation of the lawsuit by the billboard company, yet the Eleventh Circuit was satisfied nonetheless that there was "no evidence . . .

---

[5]Even though this case is here on summary judgment motions, factual "findings" by the Court of this nature are permitted in this context.  See Coral Springs, 371 F.3d at 1332, n. 10 (noting that even appellate court was permitted to make factual determination of whether city was likely to reenact challenged law).  See also, National Adv., 402 F.3d at 1334 (describing court's evaluation of evidence as part of effort to become "sufficiently convinced" that challenge is moot).

suggesting any risk that the City . . . has any intention of returning to its prior course of conduct." National Adv., 402 F.3d at 1334.

Here, the timing of the enactment of the New Sign Ordinance does not give the Court any pause because there is no evidence that the New Sign Ordinance was passed for the purpose of temporarily thwarting KH Outdoors' lawsuit or depriving KH Outdoors of its rights with an ulterior motivation of resurrecting the Old Sign Ordinance at a later date.  Rather, in this case, within a few weeks of receiving the March 4, 2004 denial letter from the County, without filing an appeal with the Board of Adjustment or engaging in any pre-suit discussions with the County to attempt to resolve the matter, the plaintiffs filed suit, putting the County on notice (apparently for the first time) that its sign ordinance was receiving close constitutional scrutiny.  The County then acted promptly to begin the process of updating and revising its entire ordinance, resulting in the June 22, 2004 New Sign Ordinance.[6]  Many of the amendments (such as, for example, changes to the garage sale sign requirements and contractor liability insurance provisions) would appear to have nothing whatsoever to do with the permitting of advertising signs such as those for which KH Outdoors had applied.  Thus, the Court cannot say that the New Sign Ordinance,

---

[6]Counsel for defendant stated at the Preliminary Injunction hearing that, consistent with the Florida law requirements for public notice, a review period before the Planning Commission, and public hearings before the County Commission, the process could hardly have been conducted more quickly.

which extensively reorganizes and amends the Old Sign Ordinance, is evidence of a sham attempt by the County to evade this lawsuit or deprive KH Outdoors of its rights. See Jews for Jesus, Inc. v. Hillsborough County Aviation Auth., 162 F.3d 627, 629 (11th Cir. 1998) (holding that constitutionality of prior policy was a moot question because policy was changed after filing of lawsuit with no reasonable expectation that prior policy would later be resumed); see also, National Adv., 402 F.3d at 1334 (holding that motivation for amendment is "not the central focus" of inquiry; rather, question is whether this motivation indicates intention of returning to prior conduct). Therefore, notwithstanding KH Outdoors' protestations to the contrary, the Court finds no bad faith in the County's decision to enact the New Sign Ordinance following the initiation of this lawsuit.[7]  To hold otherwise on this record would be to find it is *per se* bad faith to amend a statute once the constitutionality of the statute has been challenged in a lawsuit, a finding not counseled by any of the Eleventh Circuit authority reviewed by the Court.

---

[7]Moreover, plaintiffs would find swift recourse in federal court if Clay County engaged in "flip-flopping" to resurrect the Old Sign Ordinance following resolution of this suit.  See National Adv., 402 F.3d at 1335 (noting Court's "strict disapproval" of "governmental 'flip-flopping'"); Seay, 397 F.3d at 948, n.3 (warning city against "flip-flopping"); Coral Springs, 371 F.3d at 1333 (warning city that it was forbidden to temporarily amend code to thwart lawsuits).

11

### 2.    Whether Constitutionally Challenged Provisions Survived

Having found the County has no intention of resurrecting the Old Sign Ordinance and that the doctrine of voluntary cessation therefore does not save plaintiffs' constitutional challenges from being rendered moot, the Court next considers whether the challenged provisions of the Old Sign Ordinance have been retained by the New Sign Ordinance.  If so, plaintiffs' constitutional challenges may not be moot because "[a] superseding statute or regulation moots a case only to the extent that it removes the challenged features of the prior law." Seay, 397 F.3d at 949 (quoting Coral Springs, 371 F.3d at 1342).  Thus, "[t]o the extent that those features remain in place, and changes in the law have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case is not moot." Id. (quoting Coral Springs, 371 F.3d at 1342-43).  Still, even if challenged provisions remain in the New Sign Ordinance, if they "are severable from those portions of the [Old] Sign Ordinance that actually caused the denial of the permit application, there is no point in evaluating [plaintiffs'] arguments as to those provisions." Id. (emphasis added).  See also, Coral Springs, 371 F.3d at 1347 ("[I]f challenged parts of the Amended Sign Code were severable from the parts of the Code that actually caused the denial of the permit application, there would be no point in evaluating the plaintiff's arguments as to those provisions . . . knowing that the result of this inquiry could have no effect on the result in this case [because the]

12

pronouncements would be essentially advisory in nature.") (emphasis added).

Thus, notwithstanding the sheer number of challenges plaintiffs have raised (see Second Amended Complaint) which might otherwise render the task of comparing these two ordinances particularly difficult and could lead the Court to render an impermissible advisory opinion, the first step is to determine whether the provisions of the Old Sign Ordinance which "actually caused" the denial of KH Outdoor's applications have been retained by the New Sign Ordinance.  If so, the Court must consider whether those provisions are constitutionally infirm.  If they are potentially so, plaintiffs' challenge is not moot.  If those provisions are not constitutionally infirm, the Court next considers whether the remaining provisions, whether constitutionally suspect or not, are severable from those provisions which actually caused the denial of the permit applications.  Seay, 397 F.3d at 949; Coral Springs, 371 F.3d at 1347.  Only if those remaining provisions are not severable would the Court then be in a position to pass on the constitutionality of provisions other than those provisions which actually caused the denial of the permits.[8]

### a.    Provisions that "actually caused" the denial of the permits

Although plaintiffs challenge a multitude of the Old Sign Ordinance provisions, the only challenged provisions that "actually caused" the denial of the seven billboard

---

[8]Although the Court does not reach that point in this case, only at that stage would it be appropriate to address the parties' arguments as to standing.

permits were these three:  sections 20.7-21(1) and (20) (prohibiting new billboards

and off-premise signs) and section 20.7-3 (defining off-premise signs).[9]  A fourth

section which was at least tangentially related to the denial of plaintiff's permit

applications was section 20.7-8 (requiring that an Administrator review a "properly

completed and submitted permit application" "within a reasonable time") and the Court

finds it appropriate to review this provision as well.[10]

The first section, dealing with the prohibition of new billboards (§ 20.7-21(1)),

is retained by the New Sign Ordinance.  See Doc. 74, Ex. 66 (New Sign Ordinance)

at § 20.7-5(a).  However, given the County's stated interest in preserving, conserving

and protecting the natural aesthetic beauty of Clay County and in eliminating the

visual clutter and vehicular and pedestrian safety hazards created by billboards,[11] this

section is not constitutionally infirm and thus presents no basis to challenge the Old

(or the New) Sign Ordinance.  Metromedia, Inc. v. City of San Diego, 453 U.S. 490

(1981); Members of City Council of City of Los Angeles v. Taxpayers for Vincent, 466

---

[9]Although the denial letter from Clay County only referenced § 20.7-21(1), §§ 20.7-21(20) and 20.7-3 further delineate the billboard prohibition and are appropriately considered in this analysis.

[10]The Court rejects any contention that any other challenged provision played any role in the County's decision to deny the billboard permit applications or had any effect on plaintiffs' rights or remedies under that ordinance.

[11]See New Sign Ordinance (Doc. 74, Ex. 66 at pp.1-11); Old Sign Ordinance (Doc. 74, Ex. 59 at p.2).

14

U.S. 789, 806-08 (1984) (summarizing <u>Metromedia</u> and its principle that a local government's interest in avoiding visual clutter and aesthetic harm justifies billboard prohibition).

The second and third challenged sections of the Old Sign Ordinance, (§ 20.7-21(20) and § 20.7-3), together define and prohibit off-premise signs (defined in the Old Sign Ordinance as "[a]ny sign identifying or advertising a business, person, activity, goods, product, commodity, service, or entertainment not related to the premises on which the sign is located, or to a business, person, activity, goods, product, commodity, service, or entertainment, which occupies or which is conducted, sold, or offered at a location other than on the premises on which the sign is located, including (1) Posters [definition omitted][;] (2) Multi-prism signs [definition omitted] [;] (3) Painted bulletins [definition omitted][;] (4) Billboards: Billboards.").  The New Sign Ordinance has no outright prohibition against off-premise signs (see § 20.7-5, listing categories of prohibited signs) and the definition of such signs now reads: "Off-premise sign or off-site sign means any sign relating in its subject matter to commodities, accommodations, services or activities on a premises other than the premises on which the sign is located."  <u>See</u> Doc. 74, Ex. 66 (New Sign Ordinance) at § 20.7-3.  The Court finds no constitutional infirmity in this New Sign Ordinance provision.  <u>See</u> <u>Southlake Property Assoc., Ltd. v. City of Morrow, Georgia</u>, 112 F.3d 1114 (11th Cir. 1997) (holding that on-site off-site distinction is permissible in

15

commercial context provided ordinance on its face does not prohibit noncommercial speech).[12]

The final provision that plaintiffs arguably encountered when applying for the sign permits was the section requiring an Administrator to review a sign application "within a reasonable time."  Although the County argues that KH Outdoor received a response within days of submitting its applications (and that it therefore suffered no ill effects from any constitutional infirmity with the vague time limit), the New Sign Ordinance has eliminated any vagueness, requiring the Administrator to now review the sign permit application within fifteen calendar days of receipt and to grant or deny it within that time.  See Doc. 74, Ex. 66 (New Sign Ordinance) at § 20.7-13(b). Therefore, regardless of whether this section was constitutionally infirm in the Old Sign Ordinance, it is not a feature of the New Sign Ordinance, which requires review within a specific (and constitutionally permissible) period of time.  See Coral Springs,

_____

[12]Additionally, the New Sign Ordinance specifically states that the County is codifying its prior practice of permitting non-commercial speech wherever commercial speech appears and includes a "substitution" clause specifically permitting the display of non-commercial messages anywhere a sign bearing a commercial message is erected.  See New Sign Ordinance (Doc. 74, Ex. 66 at 3; § 20.7-10).  See also, Doc. 35 (Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Preliminary Injunction) at pp. 2-3 (stating that to draft "constitutionally viable sign regulations" "[a] municipality need only make a study of its aesthetic and safety needs and then provide content-neutral size, height, and quantity limitations that will actually promote those interests to a material degree" and that "regulations which impose reasonable limits" on size, height, and number of signs, "do not run afoul of the First Amendment").

371 F.3d at 1346 (finding challenge that old sign ordinance imposed no time limit to approve or deny permit applications to be moot where amended sign ordinance imposed thirty day time limit for decision).

Thus, the Court is satisfied that the provisions of the Old Sign Ordinance which "actually caused" the denial of the permit applications either have not survived in the New Sign Ordinance or they are now (and perhaps always were) constitutionally sound.  The Court therefore turns to the question of whether the remaining provisions of the New Sign Ordinance are severable.[13]   See Seay, 397 F.3d at 949; Coral Springs, 371 F.3d at 1347.

### b.    Severability

"Severability of a local ordinance is a question of state law."  Seay, 397 F.3d at 949 (quoting Coral Springs, 371 F.3d at 1347).  "Florida law clearly favors (where possible) severance of the invalid portions of a law from the valid ones;" thus "federal courts have an affirmative duty to preserve the validity of legislative enactments when it is at all possible to do so."  Coral Springs, 371 F.3d at 1347 (quotation and citation omitted).  "Whether a statut[ory provision] is severable is determined by 'its relation to the overall legislative intent of the statute of which it is a part, and whether the

_____

[13]As explained above, *supra*, p. 13, the Court must determine whether the remaining provisions of the New Sign Ordinance are severable because if they are not, the Court would then be required to determine whether those provisions are constitutional.

statute, less the invalid provisions, can still accomplish this intent.'" Id. (quoting

Martinez v. Scanlan, 582 So.2d 1167, 1173 (Fla. 1991)).  Thus, under Florida law, the

remainder of a challenged statute will be permitted to stand intact and in force when

the unconstitutional provisions can be excised without defeating the purpose of the

statute and while "leav[ing] in place a law that is complete." Seay, 397 F.3d at 950

(quoting Coral Springs, 371 F.3d at 1348).

Florida law also directs that deference be paid to a legislatively expressed

preference for severance of voided provisions.  Id.  Here, the New Sign Ordinance

contains such provisions in § 20.7-33 (a), which expresses an intent for severance of

any "part, section, subsection, paragraph, subparagraph, sentence, phrase, clause,

term or word [of the New Sign Ordinance] declared unconstitutional"; in § 20.7-33(b)

which expresses an intent for severance of any unconstitutional portion even where

severance "would result in a situation where there would be less speech, whether by

subjecting previously exempt signs to permitting or otherwise"; in § 20.7-33 (c), which

states that any portion of the New Sign Ordinance which is declared unconstitutional

shall be severed from and have no affect on those portions of the New Sign

Ordinance pertaining to "prohibited signs"; and, most particularly, in § 20.7-33 (d),

which states that if any portion of the New Sign Ordinance is declared invalid, such

declaration "shall not affect the prohibition on billboards as contained herein," thus

indicating an express legislative intent to retain the ban on all prohibited signs and

18

particularly billboards (emphasis added).

As discussed above, the denial of KH Outdoor's permit applications was based on provisions of the Old Sign Ordinance prohibiting new billboards and off-premise signs. See also, Doc. 74, Ex. 62 (letter to KH Outdoor from County Zoning and Code Enforcement Director denying permit applications). The ban on new billboards and limitations on off-premise signs as contained in the New Sign Ordinance further the regulatory purposes of the New Sign Ordinance (to avoid visual clutter and safety hazards) even in the absence of any other challenged provision. These purposes would not be destroyed by the elimination of any other provisions of the New Sign Ordinance. Seay, 397 F.3d at 950.

Thus, as held by the Eleventh Circuit in Seay, "any portions of the [Old] Sign Ordinance retained by the New Sign Ordinance that arguably may be unconstitutional are fully severable from the rest of the law, particularly the ban on billboards, which was the provision that lead to the rejection of [plaintiff's] permit applications." Id. Plaintiffs' constitutional challenges to the Old Sign Ordinance are mooted by the passage of the New Sign Ordinance. See id. at 951; see also, Coral Springs, 371 F.3d at 1350 (holding that any "possibly unconstitutional provisions of the Amended Sign Code have no bearing on the mootness of this suit, precisely because they had nothing to do with the provisions of the law that caused the rejection of the sign permit

in the first place, and their removal would do nothing to affect the latter provisions").[14]

Thus, any alleged constitutional defects in the provisions of the Old Sign Ordinance that "actually caused" the denial of KH Outdoors' permit applications have been cured by the New Sign Ordinance and any other constitutionally suspect provisions are severable; thus plaintiffs' challenges to the Old Sign Ordinance are moot.  National Adv., 402 F.3d at 1335.[15]

_____

[14]Thus, the Court need not reach the issue of whether any other portions of the New Sign Ordinance meet constitutional standards.

[15]This holding precludes plaintiffs' claim for damages.  See Granite State Outdoor Advertising, Inc. v. City of St. Petersburg, Florida, 348 F.3d 1278, 1283 (11th Cir. 2003) (holding that plaintiff's claims for actual and nominal damages fell with its as-applied challenges); Seay, 397 F.3d at 946, 951 (mooting in its entirety case seeking damages where New Sign Ordinance prohibition against billboards was completely severable from other allegedly unconstitutional provisions).

Additionally, although plaintiffs also raise an equal protection challenge (see Count IX), it too is moot as an extension of plaintiffs' now moot First Amendment challenges and additionally on grounds that KH Outdoor was not denied a permit by virtue of membership in any particular class but because the County prohibits new billboards.  See Don's Porta Signs, Inc. v. City of Clearwater, 829 F.2d 1051, 1054, n.10 (11th Cir. 1987) (discussing validity of billboard prohibition under Central Hudson commercial speech test and noting that prohibition therefore passed less stringent equal protection clause standard).  See also, Seay, 397 F.3d at 946 (finding case, which raised First Amendment and Equal Protection challenges, to be entirely moot).

Finally, as stated above, supra, n.8, the decision here on mootness does not require the Court to address standing and the Court therefore has no need to enter the debate about whether Granite State-Clearwater or the Tanner decision is the appropriate precedent to follow.  See parties' responsive briefs (Docs. 76, 77) and record of oral argument (arguing whether Court should follow Granite State Outdoor Advertising, Inc. v. City of Clearwater, Florida, 351 F.3d 1112 (11th Cir. 2003) or Tanner Advertising Group, L.L.C. v. Fayette County, Georgia, 411 F.3d 1272 (11th Cir. 2005)).  In any event, the Eleventh Circuit recently vacated the panel's opinion in Tanner and will now rehear that case en banc.  See Tanner Advertising Group, L.L.C.

**B.     Vested Rights**

KH Outdoor contends that even if this suit is otherwise moot, its claims are nonetheless justiciable because it has vested rights in the sign permits.[16]  "A 'vested right' has been defined as '[a] right that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent.'" Coral Springs, 371 F.3d at 1333 (citing Black's Law Dictionary (7th ed. 1999)).   "[A] party's vested property rights constitute an enforceable entitlement to a permit or a sign unaffected by subsequent changes in sign ordinances and may keep a constitutional challenge to a repealed sign ordinance from becoming moot under federal law." Crown Media, LLC v. Gwinnett County, Georgia, 380 F.3d 1317, 1325 (11th Cir. 2004) (quotation and citation omitted).  "State law dictates whether a vested right has been created." Seay, 397 F.3d at 948.  In Florida, vested rights are created in one of two ways:  either because "a party has reasonably and detrimentally relied on existing law, creating the conditions of equitable estoppel," or, more rarely, "when the

_____

v. Fayette County, Georgia, 429 F.3d 1012 (11th Cir. 2005).

   [16]KH Outdoor, whose representative applied for the seven sign permits under the Old Sign Ordinance, appears to be the only party claiming to hold vested rights in those permits.  In fact, at the time MooreA and Eggers joined this suit, the New Sign Ordinance had been in effect for approximately nine months and the Court would therefore not find either of them to be able to raise a claim of vested rights.  Even if they could, however, their claims would meet the same fate as KH Outdoor's because, based on the evidence before the Court, they likewise would be unable to show reasonable and detrimental reliance or bad faith by the County.

defendant municipality has acted in a clear display of bad faith." <u>Coral Springs</u>, 371 F.3d at 1334.

### 1.    Equitable Estoppel

"In order to invoke the doctrine of equitable estoppel," KH Outdoor must demonstrate "that 'it has incurred substantial expense in reasonable reliance on existing law.'" <u>Seay</u>, 397 F.3d at 948 (quoting <u>Coral Springs</u>, 371 F.3d at 1338). Here, no permits were issued and no billboards were constructed.  Just as in <u>Seay</u> and <u>Coral Springs</u>, there is "no evidence" here that KH Oudoor "has incurred any significant expense in reliance" on the Old Sign Ordinance, which, on its face, "precluded the construction of billboards, the very signs contemplated" by KH Outdoor.  <u>Seay</u>, 397 F.3d at 948.  KH Outdoor does not seriously contend otherwise.

### 2.    Bad faith

KH Outdoor does contend, however, that the County acted in bad faith when it denied its permit applications and then repealed and replaced the Old Sign Ordinance three months after the filing of this lawsuit.  "[T]he Florida cases that have found bad faith have done so in instances where it was obvious that the municipality was purposely attempting to avoid granting the permit or license *to the plaintiff*." <u>Seay</u>, 397 F.3d at 948-49 (emphasis added) (citing <u>Coral Springs</u>, 371 F.3d at 1336). "Examples of such situations include an 'emergency ordinance' passed while the application was pending, selective and erroneous enforcement of an arguably

unconstitutional provision of the law and deliberate delay of the issuance of a permit until after a building moratorium went into effect." Id. at 949 (internal quotations omitted, citing Coral Springs, 371 F.3d at 1337-38).  Here, however, as the Court found in Seay, "[n]one of these scenarios, or anything akin to them, is present in this case." Id.

KH Outdoor alleges that the timing of the passage of the New Sign Ordinance is evidence of bad faith.  As stated above when addressing bad faith in the context of voluntary cessation, see supra, pp. 9-11, here too, the timing issue is not outcome determinative.  As explained in Coral Springs,

> Florida's courts . . . have created a vested right in a small[] number of cases, in the absence of estoppel, where the defendant municipality acted in blatant and obvious bad faith in denying a permit or license.  Bad faith was evinced by the fact that the municipality did not change the relevant law until after the plaintiff had both sued and obtained a writ from a state court of general jurisdiction, or because the county deliberately withheld a permit it otherwise would have awarded until after a voter-approved moratorium went into effect.

Coral Springs, 371 F.3d at 1336.

Here, no such circumstances are present.  Rather, in this case, the Old Sign Ordinance and the New Sign Ordinance *both* prohibit new billboards.  And there is no evidence that the ordinance was amended for the purpose of thwarting *KH Outdoor's* attempt to secure a permit.   Instead, the evidence shows efforts by the County to shore up potential constitutional deficiencies with its laws while maintaining- -  then

23

and now- - the ban on new billboards.  That these efforts did not begin until after KH Outdoor filed suit does not equate to bad faith.  See Seay, 397 F.3d at 949 (noting that the alleged constitutional deficiencies of the repealed sign ordinance cured by amendment "had nothing whatsoever to do with the rejection of Seay's permit applications"); Coral Springs, 371 F.3d at 1340 (finding no bad faith where there was no "hint that the amendments to the Sign Code were prompted by a desire to single out Coral Springs unfairly, inasmuch as the sign it wanted to put up was undoubtedly impermissible under both the old and the Amended Sign Code, and the reasons the old Sign Code may have been unconstitutional were wholly unrelated to the reasons the permit application was rejected").

There is no evidence of bad faith or entitlement to equitable estoppel on this record and KH Outdoor therefore has no vested rights in the seven permits for which it applied under the Old Sign Ordinance.  Thus, each and every one of plaintiffs' claims[17] are moot and this case is due to be dismissed in its entirety for lack of subject

_____

[17]This opinion primarily deals with Counts XII-XIII, plaintiffs' as-applied challenges to the provisions of the Old Sign Ordinance, which the Court has found to be moot. Counts I-X raise facial constitutional challenges to the Old Sign Ordinance which the Court cannot consider because they are moot with the passage of the New Sign Ordinance; Count XI raises a challenge to the application fee, which is moot because KH Outdoor paid no application fee; Count XIV raises a claim that the Old Sign Ordinance was overbroad as applied to third parties, which the Court cannot consider because this claim is moot with the passage of the New Sign Ordinance; Count XV seeks the remedy of enjoining enforcement of the Old Sign Ordinance and requiring issuance of the permits, relief which is unavailable given that the remainder of this suit is moot.

24

matter jurisdiction.  See Seay, 397 F.3d at 951.

## IV.  Conclusion

Accordingly, for the reasons stated above, it is hereby

**ORDERED**:

1.      This case is **DISMISSED** for lack of subject matter jurisdiction.[18]

2.      Plaintiffs' Motion for Partial Summary Judgment (Doc. 70) is **MOOT**.

3.      Defendant's Motion for Summary Judgment (Doc. 71) is **MOOT**.

4.      The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida this 12th day of January, 2006.

TIMOTHY J. CORRIGAN
United States District Judge

s.
Copies:

counsel of record

_____

[18]Although plaintiffs' Second Amended Complaint makes several references to Florida law, none of the counts invoke Florida law as a basis for relief and the Court therefore has no occasion to exercise supplemental jurisdiction over these counts to determine whether an analysis of Florida law would yield a different result.